UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| THOMAS IRVIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 5:23-CV-00142-KKC-MAS |
| | ) |
| BARRY TAYLOR, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Thomas Irvin, an inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983 alleging violations of the Eighth Amendment. [DE 60]. Defendant Barry Taylor moves for summary judgment. [DE 82]. Irvin responded [DE 93], and Taylor replied. [DE 94]. Defendant James Ashley has not been served. For the reasons set forth below, the undersigned recommends the District Court grant Taylor's motion for summary judgment.

**I.   BACKGROUND**

The events giving rise to this case unfolded on February 12, 2023, during a basketball game in the gymnasium at Northpoint Training Center ("NTC"), where Plaintiff Thomas Irvin ("Irvin") was incarcerated. Defendant Barry Taylor ("Taylor"), an NTC Recreation Supervisor, was on duty overseeing inmate activities, including

the game in which Irvin and fellow inmate Steven North were participating. [DE 82, PageID# 454; DE 93, PageID# 557].

Irvin claims that tensions during the basketball game escalated into a physical altercation with North. [DE 60, PageID# 372 at ¶ 1; DE 93, PageID# 558]. Taylor swiftly intervened. On all accounts, Irvin and North complied with Taylor's verbal commands, lying prone on the floor with their hands behind their heads. According to Irvin, once officers De La Cruz[1] and Defendant James Ashley ("Ashley") arrived and secured him in restraints, he voiced his frustration by saying, "This is bullshit." In response, Taylor allegedly remarked, "I know what dorm you're from," which Irvin understood as a reference to his sex offender status. [DE 93, PageID# 562; *see also* DE 60, PageID# 372 ¶ 4].

Irvin alleges that, after this exchange, Ashley placed his knee on Irvin's back and tased him, despite Irvin's repeated warnings about a pre-existing heart condition. [DE 60, PageID# 372 at ¶¶ 4–5; DE 93 at PageID# 563]. Irvin alleges Ashley then put pressure on his neck and said, "this is how George Floyd died [. . .] I could kill you and I'd get away with it." [DE 60, PageID# 372 at ¶ 6]. He further alleges that he was tased four additional times by Ashley. [DE 60, PageID# 372 at ¶ 8].

Irvin alleges that he lost consciousness after being tased. [DE 60, PageID# 372 ¶ 9]. When he came to, he claims Taylor was dragging him by the elbow across the

---

[1] The original Complaint named "Jorge Cruz" as a defendant, but the Amended Complaint refers only to "Officer Gilberto De La Cruz" without naming him as a party. [DE 62, PageID# 382 n.1]. In any event, no claims remain pending against either version of Officer Cruz.

gymnasium floor, leaving abrasions on his wrists and knees. [DE 60, PageID# 372 ¶ 10; DE 93, PageID# 564–65]. Irvin says he asked to walk on his own, but Taylor refused, allegedly responding that Irvin had "lost that privilege." [DE 60, PageID# 372 ¶ 11; DE 93, PageID# 566]. He further contends that Taylor then "threw" him onto the concrete floor, causing additional injury. [DE 60, PageID# 372 ¶¶ 12–13; DE 93, PageID# 566].

Taylor's account of these events differs in several ways. He confirms that he observed a fight between Irvin and North and recalls ordering both inmates to a compliant position, which they assumed without physical force. [DE 82, PageID# 454]. He radioed for security officers and claims that their delayed response heightened the risk of serious harm, as Irvin and North remained verbally combative. According to Taylor, both inmates continued to yell threats back and forth, and the escalating tension led him to believe that a physical altercation was imminent. [DE 82, PageID# 455]. He also testified that, once security officers cuffed Irvin and North, Officer Ashley attempted to escort Irvin from the gym but struggled due to Irvin's refusal to cooperate. [DE 82-2, PageID# 491]. Taylor states that he stepped in to assist Ratliff in lifting Irvin, carrying him under the armpits. [DE 82, PageID# 456]. According to Taylor, Irvin had told officers, "You're going to have to carry me," and refused repeated commands to walk. [DE 82, PageID# 456]

Taylor asserts that he and Ratliff attempted to escort Irvin from the gymnasium for inmate safety, as Irvin remained combative despite his restraints and being tased by Ashley. [DE 82-2, PageID# 491]. While carrying Irvin due to his

refusal to walk, Ratliff lost his grip after navigating around the gym bleachers. Taylor was left momentarily supporting Irvin's body weight alone. [DE 82, PageID# 456]. Taylor testified that while he tried to maintain control of Irvin, the unexpected shift in weight caused him to lose his own grip, but he was able to set Irvin down without dropping him. [DE 82-2, PageID# 491]. Taylor emphasized that Irvin's fall was controlled, despite Irvin's yelling and attempts to spit at him. [DE 82-2, PageID# 491; DE 82, PageID# 456]. Taylor also denies that he dragged Irvin following the fall. He testified that Irvin's feet remained in contact with the ground and that he did not forcibly pull Irvin along the floor. Instead, Taylor stated that he helped Irvin back to his feet after the fall and continued the escort without further incident. [DE 82, PageID# 457].

NTC Recreation Leaders Logan Miller and Marty Long observed the incident and testified that Taylor's actions were consistent with Kentucky Department of Corrections ("KDOC") training and institutional policy. Long confirmed that Taylor did not physically engage Irvin until Irvin refused to walk, and that Taylor carried Irvin using an approved control technique by hooking underneath Irvin's arm, not dragging him. He stated that Irvin was conscious throughout the incident and had the ability to walk if he chose to do so. [DE 94-2, PageID# 660–61]. Long also affirmed that Taylor's involvement helped deescalate the situation by quickly removing Irvin from the gym. [DE 94-2, PageID# 661].

Miller similarly testified that Taylor first attempted to gain compliance through verbal commands and only physically engaged Irvin after those commands

were ignored. He described Taylor and a security officer lifting Irvin by the underarms and carrying him out of the gym, with Irvin's feet remaining in contact with the floor. [DE 94-3, PageID# 665–66]. Miller confirmed that Irvin was given multiple chances to walk on his own but declined to comply. [DE 94-3, PageID# 666]. Miller further testified that Taylor did not slam Irvin or drag him by the arms, and that Taylor's handling of the situation adhered to policy and training. [DE 94-3, PageID# 665–666].

Taylor contends that after the incident, Irvin was taken to the Special Management Unit ("SMU") and examined by medical staff, who did not provide him with bandages or medication for the injuries he claims to have sustained. [DE 82, PageID# 457]. Irvin testified that he received an EKG due to his preexisting heart condition, and the results were normal. [DE 82-1, PageID# 483]. He stated that his knees were scraped and that he had cuts on his wrists from being dragged across the floor while in restraints. However, he did not dispute that he was not given bandages or medication while in the SMU that day. [DE 82-1, PageID# 484]. He further testified that he was later placed on a heart monitor and taken to Ephraim McDowell for evaluation by a cardiologist. [DE 82-1, PageID# 485]. The record does not detail any additional treatment for his injuries, nor does it contain evidence that Irvin filed a grievance or complaint regarding inadequate medical care.

## II. PROCEDURAL HISTORY

Irvin initiated this *pro se* action on May 17, 2023. [DE 1]. In his original pleading, Irvin alleged that Defendant Barry Taylor used excessive force in violation of the Eighth Amendment and 42 U.S.C. § 1983. [DE 1, PageID# 2]. He also alleged

that Officer James Ashley used excessive force by tasing him five times, despite his compliance and preexisting medical condition. Irvin asserted that Officers Cruz and Jay Johnson failed to intervene, and that Officer Kenny Burkhead threatened to tase him "another five times" in violation of his civil rights. [DE 1, PageID# 3].

After screening Irvin's Complaint, the Court permitted Irvin's Eighth Amendment excessive force claims against Taylor and Ashley to proceed but dismissed all claims against Cruz, Johnson, and Burkhead for failure to state a cognizable constitutional violation. [DE 6, PageID# 40–41]. Irvin subsequently moved for leave to file an Amended Complaint, which revised and supplemented his factual allegations against Taylor and Ashley. [DE 55; DE 60]. In the Amended Complaint, Irvin abandoned the original allegation that Taylor slammed his head into the floor, instead alleging that Taylor dragged him by the arm across the gym floor and threw him "to the concrete," causing injury while Irvin was restrained. [DE 60, PageID# 372]. The Court granted leave to amend in part and directed that the Amended Complaint serve as the operative pleading, but reaffirmed that, consistent with its prior screening, only the Eighth Amendment claims against Taylor and Ashley would proceed. [DE 62, PageID# 385].

Following the close of discovery, Taylor moved for summary judgment. [DE 82]. After the Court permitted several extensions on Irvin's part, that motion is now fully ripe for the Court's review.

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence

must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## IV. ANALYSIS

### A. EXCESSIVE FORCE CLAIM AGAINST TAYLOR

In his Amended Complaint, Irvin asserts that Taylor violated the Eighth Amendment by using excessive force. He claims that after being tased by Ashley, he refused to walk to a temporary holding cell. In response, Taylor and another officer allegedly lifted him by his arms and legs and carried him down a hallway. During the transport, Irvin contends that Taylor threw him onto the concrete floor. He further alleges that Taylor dragged him by the elbow, causing physical injury. [DE 60, PageID# 367–68 ¶¶ 3–7].

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," a standard the Supreme Court has applied across a range of prison conditions, including the use of force by correctional officers. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). This protection, incorporated against the states through the Fourteenth Amendment, governs both formal punishment and informal abuse by prison officials during incarceration. *See Robinson v. California*, 370 U.S. 660, 666–67 (1962). To prevail on an Eighth Amendment excessive force claim, a prisoner must satisfy both objective and subjective components. *See Hudson*, 503 U.S. at 5; *Johnson v. Sootsman*, 79 F.4th 608, 615–16 (6th Cir. 2023). Objectively, the pain inflicted must be sufficiently serious, though not necessarily severe, as the Eighth Amendment prohibits even minor injuries when the force used is malicious or sadistic. *See Hudson*, 503 U.S. at

9; *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). However, purely de minimis uses of force that do not "repulse the conscience of mankind" fall outside constitutional protection. *Hudson*, 503 U.S. at 9–10.

The subjective inquiry is the "core judicial inquiry" in use-of-force cases: whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 7; *Wilkins*, 559 U.S. at 37. A prison official's unreasonable belief that force is necessary is not enough to violate the Eighth Amendment. *See Whitley*, 475 U.S. at 324. Rather, courts must evaluate factors including: (1) the need for force, (2) the relationship between that need and the amount of force used, (3) the extent of injury, (4) the threat reasonably perceived by the official, and (5) efforts made to temper the severity of the response. *Hudson*, 503 U.S. at 7; *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

In evaluating the subjective component of a use-of-force inquiry, courts afford "wide-ranging deference" to the decisions of correctional officers faced with tense, rapidly evolving situations. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002). This principle is especially relevant where an official, like Taylor, was reacting to an ongoing inmate altercation in a gymnasium setting that he subjectively feared could devolve into a prison riot. As the record reflects, Taylor initially responded without physical force, directing Irvin and another inmate to the ground after an argument escalated. [DE 82, PageID# 454; DE 93, PageID# 558]. Irvin complied. When Irvin and the other inmate continued to argue and issue threats, Taylor radioed for backup. [DE 82, PageID# 455]. Officers responded and, shortly thereafter, Irvin was

handcuffed and subsequently tased by Ashley following further noncompliance and combative behavior.

Taylor testified that, after the tasing, Irvin refused repeated instructions to stand and leave the gym, stating: "You're going to have to carry me." [DE 82, PageID# 456]. Taylor and Ratliff then lifted Irvin by his arms and legs to transport him. Taylor claims Ratliff lost his grip due to a bleacher obstruction, briefly leaving Taylor to support Irvin alone. Taylor then lost his own grip and lowered Irvin to the ground. Taylor denies dragging Irvin, stating that Irvin's feet remained in contact with the ground and that he resumed walking voluntarily a short time later. [DE 82, PageID# 457].

Irvin agrees that he was carried after being tased by Ashley but emphasizes that he was semi-conscious or unconscious at the time. Irvin asserts that after being tased, he was "out of it," "in and out of consciousness," and unable to stand without assistance. [DE 94-4, PageID# 673]. He states that he eventually regained enough clarity to ask if he could walk on his own but that his request was denied. [DE 94-4, PageID# 673; *see also* DE 93, PageID# 564–66]. He describes being carried by his arms and legs and that, as they moved through the hallway, Taylor dropped him and then dragged him the remaining distance across the floor. [DE 94-4, PageID# 673]. He claims the dragging caused abrasions to his knees and shoulders. [DE 93, PageID# 565].

Even crediting Irvin's version of events, the relevant question is not whether Taylor's actions were ideal but whether he used force maliciously and sadistically to

cause harm. *Hudson*, 503 U.S. at 6. That standard requires more than negligent or unreasonable conduct; it demands a showing of punitive intent. *See Whitley*, 475 U.S. at 320–21; *Johnson*, 79 F.4th at 616. Here, the record does not support such a finding. Taylor did not initiate force in response to the fight; he did not use pepper spray or strike Irvin. When he did intervene, it was to assist staff with a noncompliant inmate. [DE 82, PageID# 455–57]. Miller and Long both testified that Taylor's conduct complied with institutional training and appeared measured under the circumstances. [DE 94-3, PageID# 666; DE 94-2, PageID# 660]. Viewed in the light most favorable to Irvin, the record does not show that Taylor acted with the malicious or sadistic intent required to sustain an Eighth Amendment excessive force claim.

Turning to the objective component of the excessive force inquiry, the extent of Irvin's injuries likewise does not support a finding of unconstitutional force. Although the Eighth Amendment does not require a showing of serious injury to sustain an excessive force claim, the nature and severity of the harm inflicted remain relevant to assessing whether the force used was wanton or malicious. *Hudson*, 503 U.S. at 7; *Wilkins*, 559 U.S. at 37. The Supreme Court has also clarified that while minor injuries may support an Eighth Amendment claim if they result from force applied maliciously and sadistically, not every push or shove gives rise to a constitutional violation. *See Hudson*, 503 U.S. at 9–10. Conversely, de minimis injuries caused by a brief application of force that does not "repulse the conscience of mankind" will not suffice. *Id.*; *see also Lockett v. Suardini*, 526 F.3d 866, 875–76 (6th

Cir. 2008) (affirming dismissal where the only injury was a minor abrasion and there was no evidence of malicious intent).

Here, Irvin alleges that he sustained abrasions to his knees and wrists during the incident. [DE 93, PageID# 565]. However, Irvin admits he received no medical treatment for those injuries beyond an initial examination. [DE 93, PageID# 565]. These injuries, on this record and absent additional medical documentation, do not rise above the level of de minimis harm. *See Wilkins*, 559 U.S. at 38. In light of the limited force alleged, the lack of lasting or serious harm weighs heavily against finding a constitutional violation under the objective component of the excessive force inquiry.

In short, Taylor's conduct aligns more with cases where correctional officers acted in response to a security threat and used measured force to gain compliance over the noncompliant inmate. *See e.g.*, *Combs*, 315 F.3d at 557; *Davis v. Agosto*, 89 F. App'x 523 (6th Cir. 2004). Viewing the facts in a light most favorable to Irvin, the record does not support a finding under the subjective inquiry that Taylor acted maliciously or sadistically so as to support a cognizable excessive force claim. Moreover, on the current record, the claim fails on the objective inquiry as well because there is no evidence supporting Irvin's assertion that his injuries rose above the level of de minimis harm. Accordingly, summary judgment is warranted as to Irvin's Eighth Amendment claim against Taylor.

B. **EXCESSIVE FORCE CLAIM AGAINST ASHLEY**

Although Irvin alleges that Ashley violated the Eighth Amendment by repeatedly tasing him while he was restrained and compliant, that claim is not

properly before the Court on this motion. Taylor has not moved for summary judgment on Ashley's behalf, and Ashley has not entered an appearance, filed an answer, or otherwise responded to either iteration of the complaint. Accordingly, the Court declines to address the merits of Irvin's Eighth Amendment excessive force claim against Ashley at this stage. *Celotex Corp.*, 477 U.S. at 326, ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

Nor will the Court recommend dismissal under Federal Rule of Civil Procedure 4(m), which requires service of process within 90 days of filing the complaint, unless the plaintiff demonstrates good cause. Irvin is proceeding in forma pauperis ("IFP"), and the Court thus bears the responsibility for issuing his process and directing the U.S. Marshals Service ("USMS") to effect service. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3); *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

Ashley has not been served despite three attempts by USMS to effect service. [DE 21, 31, 67]. According to the filed unexecuted civil summonses, USMS made two attempts to serve Ashley with a copy of the original complaint and summons on October 25, 2023 and November 1, 2023. The Marshal noted on the second attempt that "[Ashley] no longer resides at this address." [DE 31]. After the Court granted Irvin leave to file an Amended Complaint, the Court ordered a new summons be issued. Again, per the unexecuted civil summons, the Marshal noted that he "spoke

to [the] father of James Ashley [who] no longer resides at this address." [DE 67]. This last attempt was made on August 28, 2024—nearly one year ago.

When a plaintiff proceeds IFP, a failure by the USMS to fulfill its duty may constitute good cause under Rule 4(m). *Reed-Bey v. Pramstaller*, 607 F. App'x 445, 450 (6th Cir. 2015); *Byrd*, 94 F.3d at 220. Still, an IFP plaintiff must provide "sufficient information to identify the defendant with reasonable effort." *Owens v. Riley*, No. 11-1392, 2012 U.S. App. LEXIS 4560, at *10–11 (6th Cir. Jan. 6, 2012). USMS is not required to engage in exhaustive searches. *See Horn v. Washington*, No. 22-11637, 2024 WL 1687702, at *1 (E.D. Mich. Jan. 8, 2025) (report and recommendation), adopted by No. 22-11637, 2024 WL 1676804 (E.D. Mich. Apr. 18, 2024); *Moore v. Brown*, No. 2:23-cv-11298, 2025 WL 452599, at *3 (E.D. Mich. Jan. 13, 2025) (report and recommendation), adopted by No. 23-CV-11298, 2025 WL 451670 (E.D. Mich. Feb. 10, 2025).

While the record reflects that Irvin has made no efforts to locate Ashley, the Court has also never directed Irvin to take further investigative steps. Instead, the Court solicited Ashley's last known address at the outset of this case: "Should counsel not represent any of the Defendant(s), the Court requests counsel to provide a forwarding or last known address for those Defendant(s) so that it may ensure service." [DE 6, PageID# 42]. Counsel for Taylor complied with this request by filing Ashley's last known address under seal. The address filed by Taylor's counsel is the sole address upon which service has been attempted. On the current record, Irvin reasonably relied on the Court to effect service.

Here, Irvin has not been explicitly instructed to provide a different address or warned that failure to do so would result in dismissal. This matters. In *Blair v. Schievelhud*, while unpublished, the Sixth Circuit vacated dismissal under Rule 4(m) where the record did not reflect whether plaintiffs took reasonable steps to locate the defendant or whether they had been told what additional action was needed. 2024 WL 4806299, at *2–3 (6th Cir. Nov. 12, 2024). Accordingly, while Ashley remains unserved, the Court will not, at this time, recommend sua sponte dismissal under Rule 4(m). However, Irvin is now expressly warned that if he wishes to pursue his excessive force claim against Ashley, he must provide additional information that will assist USMS in effecting service. This may include Ashley's last known address or any other identifying details sufficient to permit service with reasonable effort. If Irvin fails to do so, and if service cannot be completed using the information provided, the Court recommends dismissal of Irvin's claims against Ashley without prejudice under Rule 4(m). *See* FED. R. CIV. P. 4(m); *Owens*, 2012 U.S. App. LEXIS 4560, at *10–11.

## V.   RECOMMENDATION & ORDER

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant Barry Taylor's Motion for Summary Judgment [DE 82] be **GRANTED** and that Irvin's Eighth Amendment excessive force claim against Taylor be **DISMISSED WITH PREJUDICE**.

Furthermore, for the reasons provided above, **IT IS ORDERED** that **within thirty (30) days** of the entry of this Report and Recommendation, Irvin must **SHOW CAUSE** why his Eighth Amendment excessive force claim against Ashley should not

be dismissed under Federal Rule of Civil Procedure 4(m).  Irvin must detail the efforts Irvin has made to locate and identify Ashley for service in light of the three prior failed attempts by USMS to effect service.  Failure to timely comply or demonstrate good cause under Rule 4(m) will likely result in dismissal without prejudice of the Eighth Amendment claim against Ashley.

*Right to Object*

The Court issues this Recommended Disposition under Federal Rule of Civil Procedure 72(b)(1) and 28 U.S.C. § 636(b)(1)(B).  Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court.  Failure to make timely objections consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466, 468 (1985).

Signed this the 20th of June, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY